IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| James Roberts, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *-vs-* | ) | No. 16-cv-5560 |
| | ) | |
| | ) | Judge Lee |
| Thomas Dart, Sheriff of Cook | ) | |
| County, and Cook County, | ) | |
| Illinois, | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S LOCAL RULE 56.1 STATEMENT

Plaintiff James Roberts, by counsel, files the following statement pursuant to Local Rule 56.1(a)(3).

### I. The Parties

1. Plaintiff James Roberts has been in the Sheriff of Cook County's custody since September 10, 2014. (Exhibit 1, CCDOC Bed Assignments for Roberts; Exhibit 3, CCDOC Webpage for James Roberts; ECF No. 15, Defendants' Answer to Complaint ¶ 2.)

2. Roberts had his right leg amputated below the knee in approximately 2013 due to gangrene and poor circulation. (Exhibit 13, Roberts Dep 19:11-20:14, 35:12-23; ECF No. 15, Defendants' Answer to Complaint ¶ 6.)

3.   Prior to entering the Cook County Jail, Roberts relied on a prosthetic limb, walker, and motorized wheelchair to move from place to place. (Exhibit 13, Roberts Dep 51:18-52:14; ECF No. 15, Defendants' Answer to Complaint ¶ 7.)

4.   Under Illinois law, Defendant Thomas Dart, Sheriff of Cook County, has the duty to operate and has jurisdiction of the Cook County Jail. (55 ILCS 5/3-6017; ECF No. 15, Defendants' Answer to Complaint ¶ 3.)

5.   Defendant Cook County is joined in this action pursuant to *Carver v. Sheriff of LaSalle County,* 324 F. 3d 947 (7th Cir. 2003) and, along with defendant Sheriff, is responsible for the accommodating the needs of the disabled inmates at the Jail. (Exhibit 14, Interagency Agreement at 4; ECF No. 15, Defendants' Answer to Complaint ¶ 4.)

6.   Defendant Cook County has received federal financial assistance since at least 2011. (ECF No. 15, Defendants' Answer to Complaint ¶ 5.)

7.   Defendant Sheriff of Cook County has received federal financial assistance since at least 2011. (ECF No. 15, Defendants' Answer to Complaint ¶ 5.)

## II.    Jurisdiction

8.    This is a civil action arising under Section 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a). The jurisdiction of this Court is conferred by 28 U.S.C. §12133 and 29 U.S.C. §794a(a)(2). (ECF No. 15, Defendants' Answer to Complaint ¶ 1.)

## III.    Background Regarding the ADA and Cook County Jail

9.    In 1998, the regulations governing the ADA were known as the "1991 ADA Standards for Accessible Design." (Exhibit 5; Exhibit 2, Gumm Dep 124:4-10.) These "1991 Standards," also set out detailed standards for lavatories and mirrors, toilets, and showers to be accessible to people with disabilities. (Exhibit 5.)

10. The "1991 Standards" did not contain specific accessibility standards applicable to cells in correctional facilities. 28 C.F.R. Pt. 35, App. A at 641 (2010). Nonetheless, correctional and detention facilities operated by or on behalf of public entities have always been subject to the nondiscrimination and program accessibility requirements of title II of the ADA." (*Id.*)

11. The appendix to the 1980 regulations implementing the Rehabilitation Act explicitly state that the Act applies to detention and

correctional agencies. 45 Fed. Reg. 37620, 37630 (June 3, 1980), attached as Exhibit 4.

12. Design standards for accessible lavatories, mirrors, and toilets in correctional facilities are illustrated in Exhibit 7, United States Department of Justice, Civil Rights Division ADA/Section 504 Design Guide: Accessible Cells in Correctional Facilities.

13. Exhibit 7 was referred to as the Justice Department's "newest technical assistance publication" in a Justice Department publication from 2005. (Exhibit 8, Department of Justice, Enforcing the ADA: A Status Report from the Department of Justice at 15 (October 2004 – March 2005), available at http://www.ada.gov/oct04mar05prt.pdf.)

14. The 1991 ADA architectural standards and UFAS require a toilet seat height to be between seventeen to nineteen inches. (Exhibit 5 at 531, § 4.16.3; Exhibit 4 at 181, § 4.16.3). The distance from the centerline of the toilet to the side wall must be 18 inches as required by the 1991 ADA Standards, (Exhibit 5 at 531, 533, § 4.16.2, fig. 28), and UFAS, (Exhibit 4 at 181-82, § 4.16.2, fig. 28). Grab bars are required by the 1991 ADA Standards, (Exhibit 5 at 535, § 4.17.6), and UFAS, (Exhibit 4 at 184, § 4.17.6).

15. The 1991 ADA Standards, (Exhibit 5 at 540, §§ 4.24.3, 4.24.5), and UFAS, (Exhibit 4 at 188, §§ 4.24.3, 4.24.5) require a sink that can be reached by a wheelchair user.

16. The 1991 ADA Standards (Exhibit 5 at 536, § 4.21.3,§ 4.21.4), and UFAS, (Exhibit 4 at 186, § 4.21.3, § 4.24.4), require a mounted shower seat and grab bars.

17. By at least May 2014, the Sheriff's Office was aware that "grab bars of a certain height, a toilet seat of a certain height" and "clear floor space" would make a toilet accessible under the ADA. (Exhibit 11, Rivero-Canchola Dep as Sheriff's Rule 30(b)(6) designee 30:17-31:5.)

18. From August 1, 2012 to at least June 9, 2015, the Sheriff had an agreement with approximately 10 jurisdictions outside the Cook County Department of Correction to temporarily house inmates remanded to his custody. (Exhibit 15, Moreci Dep as Sheriff's Rule 30(b)(6) designee 10:12-22). As of June 9, 2015, the Kankakee County Jail was one outside agency that the Sheriff could relocate inmates due to "security concerns, overcrowding, high risk, [or] high profile." (*Id.* 10:23-11:5.)

19. Between May of 2012 and September 23, 2016, the Sheriff has "moved inmates to other county jails because of safety and security

reasons and sometimes some overcrowding issues." (Exhibit 12, Burke Dep 229:10-15.)

20. From May of 2012 to September 23, 2016, Sheriff Dart held meetings with members of jail management. These meetings were initially called weekly "accountability meetings" but evolved to periodic meetings that may include Director Daniel Moreci, Director Jones, Former Director Cara Smith, and Matthew Burke. Matthew Burke, the Sheriff's Rule 30(b)(6) designee, does not recall discussing accessibility for wheelchair users at the jail or the Justice Department's oversight of accessibility at these meetings. (Exhibit 12, Burke Dep 240:7-243:13.) Daniel Moreci, another participant of the Sheriff's meetings since 2009 avers the following issues were never discussed: the assignment of wheelchair using detainees to various cells/living units at the jail; renovations at the jail relating to ADA compliance; accommodating wheelchair using detainees attending court; and the assignment of detainees with mobility limitations to the RTU in August 2014. (Exhibit 16, Moreci Affidavit ¶¶ 2-8.)

21. Daniel Moreci has been the First Assistant Executive Director at the Cook County Department of Corrections for about four years and since 2011 has been an Assistant Executive Director.(Exhibit 17,

Moreci Dep 5:5-20.) Director Moreci is aware that in May 2012 the Justice Department issued a letter or report to the Sheriff of Cook County that disabled people in wheelchairs were not being placed in cells which accommodated their disability. (Exhibit 17, Moreci Dep 79:11-18.) Director Moreci was aware in 2013 that an accessible cell toilet must have grab bars. (Exhibit 17, Moreci Dep 82:16-23.)

## IV.   Plaintiff's Incarceration at the Cook County Jail's Residential Treatment Unit

22. The Residential Treatment Unit (RTU) is a building at the Cook County Jail that opened in 2013. (Exhibit 10 Page 2, Cook County Rule 26(a)(2)(C) Disclosure in *Flora v. Dart*, 15 C 1127.) When the RTU opened, it had cells that met the 2010 ADA Structural Standards. (Exhibit 9, Gumm Dep 183:13-184:11.)

23. There are six dormitories on the third floor of the RTU and two tiers of cells known as Tier 3A and Tier 3E. (Exhibit 9, Gumm Dep 191:8-11; Exhibit 11, Rivero-Canchola Dep 68:23-69:15, 130:22-131:5.)

24. The third floor of the RTU has two living units (or tiers) with ten cells in each tier. These tiers are known as Tier 3A and 3E. (Exhibit 11, Rivero-Canchola Dep 179:16-180:5.)

25. The third floor of the RTU has two cells that comply with the 2010 ADA Structural Standards. One cell is known as "cell 10" and is located on Tier 3A. The other cell is known as "cell 10" and is located on Tier 3E. (Exhibit 18, List of wheelchair accessible beds in CCDOC; Exhibit 11, Rivero-Canchola Dep 112:5-113:3,132:2-133:9.)

26. The fourth floor of the RTU has four cells that are compliant with the 2010 ADA Structural Standards. Two cells are located on Tier 4A known as cells 6 and 10. Two other cells are located on Tier 4E commonly known as cells 6 and 10. (Exhibit 18, List of wheelchair accessible beds in CCDOC.)

27. Plaintiff was assigned to the following cells in the RTU on the dated listed below that did not satisfy the ADA Design Standards:

|   | Start | End | Days | Tier | Cell |
|---|-------|-----|------|------|------|
| 1 | 10/31/2014 | 11/18/2014 | 18 | 3E | 6 |
| 2 | 12/7/2014 | 2/12/2015 | 67 | 3A | 1 |
| 3 | 2/12/2015 | 3/14/2015 | 30 | 3A | 7 |
| 4 | 3/15/2015 | 3/18/2015 | 3 | 3A | 6 |
| 5 | 12/16/2015 | 4/7/2016 | 113 | 3E | 6 |
| 6 | 4/7/2016 | 4/15/2016 | 8 | 3A | 6 |

| 7 | 5/22/2016 | 5/26/2016 | 4 | 3E | 5 |

(Exhibit 1, CCDOC Bed Assignments for Roberts; Exhibit 18, List of wheelchair accessible beds in CCDOC; Exhibit 11, Rivero-Canchola Dep 112:5-113:3,132:2-133:9.)

28. Plaintiff was assigned to the following cells in the RTU on the dated listed below that satisfied the ADA Design Standards:

|   | Start | End | Days | Tier | Cell |
|---|-------|-----|------|------|------|
| 1 | 9/26/2014 | 10/31/2014 | 35 | 3E | 10 |
| 2 | 11/18/2014 | 12/7/2014 | 19 | 3E | 10 |
| 3 | 3/18/2015 | 3/29/2015 | 11 | 4A | 10 |
| 4 | 3/29/2015 | 5/13/2015 | 45 | 3A | 10 |
| 5 | 5/13/2015 | 8/12/2015 | 91 | 3E | 10 |
| 6 | 8/12/2015 | 12/16/2015 | 126 | 3A | 10 |
| 7 | 4/15/2016 | 5/22/2016 | 37 | 3A | 10 |

(Exhibit 1, CCDOC Bed Assignments for Roberts; Exhibit 18, List of wheelchair accessible beds in CCDOC.)

## V.   Plaintiff's Various Complaints About Non-ADA Compliant Cell Assignments

29. In a written complaint on a Cook County Sheriff's Office Inmate Grievance Form dated November 5, 2014, while assigned to the RTU, Tier 3E, Cell 6, plaintiff requests "pull up bars and rails place in the right place for people with disability" and wrote:

> I'am in cell number 6. I can not use the toilet because there are no rails or bars to pull up with. The officer (I could not get his name was out of the unit or tear) for over an hour I need to go to the bathroom. I ring the button for over an hour no respond to my ring the button. No officer I band on the door to go to the bathroom, but I could not use the toilet in cell 6.

(Exhibit 19, Page 1, Inmate Grievance Form Dated 11/5/2014.)

30. Plaintiff again wrote a complaint on an Inmate Grievance Form dated November 6, 2014 requesting, in part, "cell with bars or rails in the right place" and wrote:

> I am disabelable I have one leg. At the change of shift I need to go to the bathroom the officer finish his count and let me out of the cell to use the bathroom I could not use the toilet because the rails are in the wronge place I wear a prost leg
>
> The could not put on my right leg because my leg was swollen. I am in a cell with a toilet that I can not use this is cell 6 I was in cell 10 and I could use the toilet I was moved cell.

(Exhibit 19, Page 2, Inmate Grievance Form dated 11/6/2014.)

-10-

31. In response to plaintiff's above identified complaints, Marlene Fuentes, the Sheriff's then ADA Coordinator, provided the following response:

> Mr. Roberts requires a wheelchair for long distances only per his medical alerts. Mr. Roberts should not have a wheelchair on the living unit. As a reminder the bathroom in the dayroom has rails.

(Exhibit 19, Page 3, Inmate Grievance Response/Appeal Form)

32. Plaintiff again wrote a complaint on an Inmate Grievance Form dated November 15, 2014 requesting, in part, "bars or rails to pull up." Plaintiff complains "I cannot use the toilet because there are no bars or rails to pull up with I can not get up or down on the toilet." Roberts go on to express fear that he is a "high rise of falling I loose my balance." (Exhibit 19, Page 4, Inmate Grievance Form dated 11/15/2014.) In response to this complaint, Roberts was relocated to an ADA compliant cell and ADA Compliance Officer Fuentes wrote "Mr. Roberts is currently housed in a cell with grab bars." (Exhibit 19, Page 5, Inmate Grievance Response/Appeal Form CCSAO Roberts 00075.)

33. Initially, when Roberts entered the jail, he was able to walk limited distances with his prosthetic leg and a walker. (Exhibit 13, Roberts Dep 53:14-54:10.) In December 2016, when Roberts was

-11-

deposed, he testified that for an extended period of time he had been without the ability to use his prosthetic leg due to pain and relied primarily on a wheelchair to move from place to place. (Exhibit 13, Roberts Dep 54:2-21.)

34. Medical records from November 14, 2014 document Roberts complained of "pain with walking" because of a "loose fitting prosthesis, short on right." (Exhibit 20, Page 1, also marked Roberts v. Dart 7062.)

35. Physical therapy records from a March 11, 2015 evaluation show Roberts "presents with obvious abnormal gait pattern due to strength deficits and pain from report of improper fit of prosthesis." (Exhibit 20, Page 8, also marked Roberts v. Dart 2087.) A few days later, on March 14, 2015, Roberts was treated at Stroger Hospital for a fall caused when "his right prosthesis was not working." (Exhibit 20, Page 11, also marked Roberts v. Dart 7015.)

36. Physical therapy records from an August 4, 2015 evaluation show Roberts preferred to use "his wheelchair/walker," that with Dr. McCarthy present, it was observed that Roberts "need a new socket" for his prosthesis, and that he was discharged from physical therapy until he received a new socket. (Exhibit 20, Pages 25-30, also marked Roberts v. Dart 2105-2110.)

37. Physical therapy records from January 27, 2016 show Roberts "requiring use of manual WC for all ambulation needs" because problems with a new prosthetic limb and that under "Fall risk" the record reads "[n]o with properly fit prosthesis." (Exhibit 20, Pages 31, 34, also marked Roberts v. Dart 2111, 2114.)

38. Roberts requires grab bars near the toilet to transfer and prevent falls. (Exhibit 13, Roberts Dep 75:1-12, 114:17-115:15.)

39. Roberts has fallen numerous times while at the Cook County Jail. (Exhibit 13, Roberts Dep 83:24-84:10.)

40. Roberts recalls falling in 2014 when assigned to cell 6 on Tier 3E because there were no rails near the toilet to prevent falls. (Exhibit 13, Roberts Dep 74:21-75:12.)

41. Roberts also fell when attempting to use the toilet when assigned to cell 7 on Tier 3A and received assistance from the correctional and medical staff for a chipped tooth. (Exhibit 13, Roberts Dep 81:15-82:6.)

42. When Roberts was assigned to a non-ADA compliant cell in the RTU, the Sheriff had a policy that if a disabled person, because of his (or her) disability, was unable to use the toilet in their cell, they could request permission to exit the cell to use the ADA compliant toilet in the dayroom. The Sheriff's ADA Compliance Officer believes this policy

provides disabled inmates - not assigned to ADA compliant cells - equivalent access to toilet as abled body inmates. (Exhibit 11, Rivero-Canchola Dep 180:21-185:13.)

43. On multiple occasions, Roberts rang a buzzer in his cell requesting permission to use the dayroom accessible toilet. (Exhibit 13, Roberts Dep 118:23-119:5.) Frequently, Roberts was not granted permission to leave his cell to use the accessible toilet by the correctional staff. (Exhibit 13, Roberts Dep 118:9-122:20.)

44. Defendants deny that, during plaintiff's incarceration at the Jail, there was insufficient number of housing units to accommodate each inmate who required assistive devices to move from place to place. (ECF No. 15, Defendants' Answer to Complaint ¶¶ 10-11.)

## VI.    Courthouse Accessibility

45. Roberts attends Court approximately once per month at the Leighton courthouse also known as the Criminal Court Building. (Exhibit 25, Court Minutes Associated View for James Roberts.)

46. Wheelchair using detainees attending court at the Leighton Courthouse are held in the basement at or around bullpen 34 in Division 5 ("Bullpen 34/5") for several hours before being brought to their court appearance. (Exhibit 21, Affidavit of Michael Gumm filed in

*Lacy v. Dart*, 14-cv-6259, March 25, 2015 ¶ 3; *Lacy v. Dart*, 2015 WL 5921810 at *6-7.)

47. An accessible toilet and sink were not provided to detainees waiting for court appearances at the Leighton Courthouse until the end of March 2015 when renovations to the toilet facilities in "Bullpen 34/5" were completed. (Exhibit 21, Affidavit of Michael Gumm filed in *Lacy v. Dart*, 14-cv-6259, March 25, 2015, ¶ 3; Exhibit 10, Cook County Rule 26(a)(2)(C) Disclosure in *Flora v. Dart*, 15-cv-1127.)

48. In *Lacy v. Dart and Cook County*, 14-cv-6259, the United States District Court for the Norther District of Illinois held defendants had violated the ADA because they had denied wheelchair using detainees "access on the same basis as non-disabled detainees to bathroom facilities at the six courthouses [including Leighton]." *Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *11 (N.D.Ill. Oct. 8, 2015).

49. Wheelchair using detainees attending court at the Leighton Courthouse must navigate up and down steep ramps that do not comply with the architectural standards set by the Americans with Disabilities Act. (Exhibit 9, Gumm Dep 87:4-89:7; Exhibit 10, Gumm Rule 26(a)(2)(C) Disclosure in *Flora v. Dart*, 15 C 1127.) Under the ADA, the Leighton ramps are considered a physical barrier and to

overcome these barriers, a reasonable accommodation is for a
correctional officer to push wheelchair users up and down the ramps.
(Exhibit 9, Gumm Dep 105:9-106:3, 109:19-111:22.)

50. Roberts, at times, was required to navigate up and down the
Leighton ramp in his wheelchair without assistance. (Exhibit 13,
Roberts Dep 113:9-20.)

**VII.  Defendants' Attempts to Comply with the ADA and the
Rehabilitation Act**

51. In 2007, several paraplegic and partially-paralyzed detainees at
the Cook County Jail filed a class action seeking damages for alleged
discrimination on the basis of their disabilities at the Jail. *Phipps v.
Sheriff of Cook County*, 07-cv-3889, N.D.Ill. The district judge ordered
that case could proceed as a class action on March 26, 2008. 249 F.R.D.
298 (N.D.Ill. 2008). *Lacy v. Dart*, 2015 WL 7351752, at * 3 (Nov. 19,
2015) (Gettleman, J.).

52. After the district judge denied cross motions for summary
judgment, 681 F.Supp. 899 (N.D.Ill. 2010), the parties agreed to a
monetary settlement of the case and the district judge approved the
class action settlement on September 17, 2010. (Exhibit 22, Order in
*Phipps*).

53. On May 13, 2010, defendants entered into an agreed order in *United States v. Cook County*, 10-cv-2946, which requires, among other things, that the Jail "shall house inmates with disabilities . . . in appropriate facilities" and that the County "shall build out, remodel, or renovate clinical space as needed to provide appropriate housing for inmates with disabilities." (Exhibit 2, Agreed Order in *United States v. Cook County*, 10-cv-2946, May 13, 2010, ¶¶ 52(e), (g).)

54. In *Crockwell v. Dart*, 15-cv-825, the United States District Court for the Northern District of Illinois held "[t]itle II of the ADA requires affirmative, proactive accommodations necessary to ensure meaningful access to public services and programs, not accommodations upon request, otherwise public entities could simply avoid the ADA structural standards in favor of providing an aid or beneficiary, and then could avoid affirmative compliance altogether by awaiting requests for individual assistance." 2016 WL 4493456, at * 4 (Aug. 8, 2016) (Shah, J.) (internal citations omitted).

55. In 1998 defendants began an "extensive, county-wide project [] to bring 'publicly accessed areas' of County owned facilities into compliance with then-current ADA structural requirements." *Lacy v. Dart*, 2015 WL 7351752, at *3.

56. "On August 6, 2004, the Project Director of the Cook County Office of Capital Planning announced that once the renovations were completed, the County would be 'the first government to have tackled the ADA issue and won.'" *Lacy v. Dart*, 2015 WL 7351752, at *3.

## VIII.    Disclosures To Defendants

57. In response to defendant Cook County's interrogatory number 5, plaintiff identified that he may rely on material filed in support of summary judgment in *Flora v. Dart*, 15 C 1127. (Exhibit 23, Response to Cook County's First Set of Interrogatories ¶ 5.) In *Flora,* plaintiff relied on, among several things, the deposition transcripts of ADA Compliance Officer Sabrina Rivero-Canchola and ADA Project Director Michael Gumm (Exhibit 24, Index of Exhibits in *Flora v. Dart*, 15 C 1127.)


/s/  Patrick W. Morrissey
Patrick W. Morrissey
ARDC No. 6309730
Thomas G. Morrissey, Ltd.
10150 S. Western Ave., Suite Rear
Chicago, Illinois 60643
(773) 233-7900
patrickmorrissey1920@gmail.com