IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

James Roberts,                                    )
                                                  )
                        *Plaintiff*,              )
                                                  )        16-cv-5560
                        *-vs-*                     )
                                                  )        Judge Lee
Thomas Dart, Sheriff of Cook                      )
County, and Cook County, Illinois,                )
                                                  )
                                                  )
                        *Defendants*.             )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff James Roberts, who uses ambulatory aids because his right leg is amputated below the knee, suffered personal injuries when he was deprived of rights secured by the Americans with Disabilities Act and the Rehabilitation Act while detained at the Cook County Jail.

Plaintiff seeks partial summary judgment on liability on his ADA and Rehabilitation Act claims: First, that defendants' decision to assign him to various non-ADA compliant cells with an inaccessible toilet caused plaintiff to incur personal injuries. Second, that defendants failed to accommodate plaintiff's disability when they required him to navigate without assistance steep ramps to and from appearances in his criminal case at the Leighton Courthouse and failed to provide an accessible toilet when he made those appearances until the end of March 2015.

The legal and factual questions of plaintiff's first claim were adjudicated against defendants in *Clemons v. Dart*, 168 F.Supp.3d 1060 (N.D. Ill. 2016) (Tharp, J.) and again in *Crockwell v. Dart*, 2016 WL 4493456 (N.D. Ill. 2016) (Shah, J.). The legal and factual questions of plaintiff's second claim were adjudicated against defendants in *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015) and again in *Crockwell v. Dart*, 2016 WL 4493456.

Plaintiff shows below that his motion should be granted as to liability for two of his claims under the ADA and Rehabilitation Act.[1]

## I.  Facts

The initial regulations governing the ADA were known as the "1991 ADA Standards for Accessible Design." (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶ 9.)  These standards set out detailed standards for toilets, sinks, and showers to be accessible for people with disabilities. (*Id.*) For a toilet to meet the 1991 ADA Standards and the Uniform Federal Accessibility Standards (UFAS) it must have grab bars. (*Id.* ¶ 14.) Since at least May 2014, defendants have known that grab bars are necessary for a toilet to meet the ADA Structural Standards. (*Id.* ¶ ¶ 17, 21.)

Plaintiff James Roberts entered the Cook County Jail in September 2014. (*Id.* ¶ 1.) Prior to entering the Jail, Roberts relied on a combination of ambulatory aids to move from place to place, including a prosthetic limb, walker, and

---

[1] Plaintiff also brings a claim under the ADA that defendants failed to accommodate a substantial hearing impairment by refusing to provide a hearing aid. Plaintiff does not move for summary judgment on this claim. *See* ECF No. 1, Complaint ¶¶ 17-21.

motorized wheelchair. (*Id.*¶ 3.) Roberts used these ambulatory aids because his right leg was amputated below the knee in 2013. (*Id.* ¶ 2.)

Because of his disability, Roberts requires grab bars to safely transfer to a toilet. (*Id.*¶ 38.) For a significant portion of his incarceration, Roberts relied exclusively on a wheelchair to ambulate because his prosthetic limb did not properly fit. (*Id.* ¶¶ 33-37.)

The Residential Treatment Unit (RTU) is a building at the Cook County Jail that opened in 2013. (*Id.* ¶ 22.) When the RTU opened, it had cells that satisfied the 2010 ADA Structural Standards. (*Id.* ¶ 25.) On the third floor of the RTU, two cells complied with the ADA Structural Standards, these cells are known as Tier 3A cell 10 and Tier 3E cell 10. (*Id.*)

From September 26, 2014 to May 24, 2016, when this complaint was filed, defendants routinely assigned Roberts to various cells on the third floor of the RTU that did not satisfy the ADA Structural Standards. (*Id.* ¶¶ 27-28.) In total, Roberts spent 243 days assigned to various non-ADA complaint cells. (*Id.* ¶ 27.) None of these cells had grab bars near the toilet as mandated by the ADA Structural Standards. (*Id.* ¶¶ 14, 17, 21, 23-27.)

In November 2014, Roberts submitted numerous grievances about his need for grab bars near the cell toilet and that he was at risk of falling. (*Id.* ¶¶ 29-32.) Although Roberts was relocated to an ADA compliant cell on November 18, 2014 following his grievances, (*id.* ¶¶ 27-28, 29-32), defendants continued to assign Roberts to various non-ADA compliant cells in 2014, 2015, and 2016. (*Id.* ¶¶ 27-

28.) It is also undisputed that Roberts suffered serious personal injuries when he fell while assigned to these non-ADA compliant cells. (*Id.* ¶¶ 35, 39-41.)

While detained at the Jail, plaintiff attended court at the Leighton Courthouse about once each month. (*Id.* ¶ 45.) Wheelchair using detainees are held in the basement at or around bullpen 34 in division 5 ("Bullpen 34/5") for several hours before being brought to their court appearance. (*Id.* ¶ 46.) An accessible toilet and sink were not provided to detainees waiting for court appearances at the Leighton Courthouse until the end of March 2015 when renovations to the toilet facilities in "Bullpen 34/5" were completed. (*Id.* ¶ 47.) Wheelchair using detainees attending court at the Leighton Courthouse must also navigate up and down steep ramps that do not comply with the ADA. (*Id.* ¶ 49.)

In *Lacy v. Dart and Cook County*, 14-cv-6259, the United States District Court for the Northern District of Illinois held that defendants had violated the ADA when they denied wheelchair using detainees "access on the same basis as non-disabled detainees to bathroom facilities at the six courthouses [including Leighton]" and by requiring wheelchair using detainees to navigate, without assistance, up and down the steep ramp to the Leighton Courthouse. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶¶ 48-49.)

## II.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary

judgment is not appropriate if there is a "genuine" dispute about a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Mere, "metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff shows below that the undisputed facts require the grant of summary judgment on liability for two parts of plaintiff's claims.

### III.    The Statutory Framework

Title II of the ADA, 42 U.S.C. §§12131-12165 *et seq*., applies to prisons and jails, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998), and requires that these "public entities" accommodate the needs of prisoners with disabilities.[2]

The Sheriff of Cook County is responsible for the care and custody of detainees at the Cook County Jail. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶ 4.) Cook County owns and controls funding for the construction and modification of the Jail and is responsible for accommodating the needs of disabled inmates at the Jail. (*Id.* ¶ 5.) Both are public entities subject to suit under the ADA. *Crockwell*, 2016 WL 4493456, at *2.

Principles of respondeat superior apply to actions under the ADA *Delano–Pyle v. Victoria Cnty., Tex.,* 302 F.3d 567, 574–75 (5th Cir. 2002); *Duvall v. Cnty.*

---

[2] The ADA defines "public entity" to include "any State or local government" and "any department, agency . . . or other instrumentality of a State," § 12131(1).

*of Kitsap*, 260 F.3d 11124 (9th Cir. 2001). In *Love v. Westville Corr. Ctr.,* 103

F.3d 558, 560 (7th Cir. 1996), the Court set out the three elements a plaintiff must

prove to establish an ADA claim:

1. That he (or she) is a "qualified person with a disability."

2. That he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such entity, and

3. That the denial or discrimination was "by reason of his [or her] disability."

The Rehabilitation Act requires a fourth element of receipt of federal funds.

*Jaros*, 684 F.3d at 672. There is no dispute here that defendants Sheriff and Cook

County received federal financial assistance. (Plaintiff's Statement Pursuant to

Local Rule 56.1(a)(3) ¶¶ 6-7.)

To obtain damages under the ADA, a plaintiff must prove intentional

discrimination, although "there is a split over the appropriate standard for showing

intentional discrimination." *CTL ex rel. Trebatoski v. Ashland School Dist.*, 743

F.3d 524, 528 n.4 (7th Cir. 2014). As the Court of Appeals noted in *CTL*,

"deliberate indifference" is the majority rule for showing intentional

discrimination. *S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248,

262-63 (3rd Cir. 2013). The Seventh Circuit, however, has not decisively decided

this issue. *Strominger v. Beck*, 592 F.App'x. 508, 511-12 (7th Cir. 2014).

## IV. The Undisputed Facts Show that Inaccessible Housing Assignments Violated the ADA

### A. Plaintiff is a Qualified Person with a Disability

It is beyond dispute that, as a person with a partial amputation of his leg, plaintiff is a "qualified person with a disability" covered by the ADA and Rehabilitation Act. *See McKinnie v. Dart*, 2015 WL 5675425, at *6 (N.D. Ill. 2015) (noting at summary judgment it was undisputed that a plaintiff with prosthetic leg was a qualified person with a disability).

Plaintiff also relied on a wheelchair to move from place to place because his prosthetic leg did not fit and caused pain. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶¶ 33-37.) An individual who uses a wheelchair is "disabled within the meaning [of the ADA]." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (citing 42 U.S.C.A. § 12102(1)(A)).

Plaintiff shows below that he was denied access to programs at the Jail "by reason of his disability" and is therefore entitled to summary judgment on liability.

### B. Plaintiff Was Denied Services, Programs, or Activities because of His Disability

Under the ADA, a covered entity must "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (citing 42 U.S.C. § 12131(2)). Title II requires "program access," which means that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

-7-

to discrimination by any such entity." 42 U.S.C. § 12132. In other words, "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). And toilets made available to inmates are a "program or activity" under the ADA. *Bramlett v. Dart*, No. 14 C 5939, 2015 WL 4148711, at *3 (N.D.Ill. July 9, 2015).

For facilities built after 1992, the ADA requires compliance with specific architectural accessibility standards. *Lane*, 541 U.S. 532. But even older buildings must provide the program access required by Title II and the most recent ADA standards "provide guidance as to whether an existing facility is readily accessible and usable by individuals with disabilities." *Brown v. Cnty. of Nassau*, 736 F.Supp.2d 602, 617 (E.D.N.Y. 2010); *Flynn v. Doyle*, 672 F.Supp.2d 858, 879-80 (E.D. Wis. 2009); *Pascuiti v. New York Yankees*, 87 F.Supp.2d 221, 226 (S.D.N.Y. 1999).

It is beyond dispute that plaintiff's various cell assignments on the third floor of the RTU did not comply with the ADA Structural Standards because they did not have grab bars near the toilet. As a result, plaintiff was compelled to transfer without the assistance of grab bars and risk falling. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶ 38.) Indeed, Roberts fell numerous times while transferring to the non-ADA compliant toilet and risked injury every time he used the inaccessible toilet. (*Id.* ¶ 39.)

In *Wisconsin Comm'y Servs., Inc. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006), the Court of Appeals held that to prove a claim under the ADA, the [p]laintiff must show but for his disability, "he would have been able to access the services or benefits desired." *Id.* at 752. Plaintiff meets this standard because he would have been able to access the toilet without limitation had he not been disabled. Because of his disability, however, plaintiff could only use the toilet if defendants provided him with a proper accommodation. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶ 38.) This defendants failed to do for a significant period of plaintiff's incarceration.

## C. Defendants are Liable for Damages under the ADA

The Seventh Circuit has explained that deliberate indifference is the "functional equivalent of intent." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). In a jail setting, "unacceptable conditions are actionable constitutional violations because they are consequences of deliberate decisions (as in 'deliberate indifference') – namely the decisions to incarcerate persons who by being incarcerated in the Cook County Jail are subjected to unconditional conditions of confinement." *United States v. Cook County*, 761 F.Supp.2d 794, 798 (N.D.Ill. 2011) (3-judge court). Defendants' decision to incarcerate a disabled individual such as plaintiff despite the lack of accessible housing for that individual – whether because of overcrowding, a broken toilet, ineffective collaboration assigning rooms, or any other reasons – constitutes deliberate indifference entitling plaintiff to damages under the ADA.

Likewise, the intentional acts of defendants' personnel in assigning plaintiff to inaccessible housing units, even though it is obvious he requires assistive devises to ambulate, including a wheelchair, amounts to deliberate indifference. As the Seventh Circuit has held, failing to accommodate an inmate's disability by refusing to assign the inmate to an accessible cell violates the ADA. *Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012).

The need for accessible facilities for disabled detainees was well settled in 2014 when defendants accepted plaintiff into the Jail. In 1998, the Supreme Court held conclusively that the ADA applies to jails and prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). As the ADA regulations explain, correctional and detention facilities operated by or on behalf of public entities have always been subject to the nondiscrimination and program accessibility requirements of title II of the ADA." 28 C.F.R. Pt. 35, App. A at 641 (2010). Indeed, defendants acknowledged their duty to provide accessible housing in the agreed order entered in *United States v. Cook County*, 10-cv-2946 in May 2010. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶ 53.)

To eliminate any doubt about the defendants' knowledge, the County began an extensive county-wide project in 1998 to bring "publicly accessed areas" of County owned facilities into compliance with then-current ADA structural requirements. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶ 55.) On August 6, 2004, the Project Director of the Cook County Office of Capital Planning announced that once the renovations were complete, the County would

be "the first government to have tackled the ADA issue and won." (*Id.* ¶ 56.) And the Justice Department gave notice to the Sheriff and County in May 2012 that wheelchair users were not being placed in cells which accommodate their disability. (*Id.* ¶ 21.) Despite the ongoing litigation in *United States v. Cook County* and the *Phipps* settlement in 2010, the Sheriff did not discuss overcrowding or issues relating to accommodating wheelchair users during regular meetings and took not step to relocate wheelchair using prisoners to outside correctional facilities. (*Id.* ¶¶ 18-21, 51-53.)

Another component of deliberate indifference is the knowing disregard of an excessive risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As in *Crockwell*, the record supports only a finding that the defendants failed to prevent plaintiff's federal statutory rights from being violated. *Crockwell*, 2016 WL 4493456, at *4. The undisputed evidence shows that defendants knew of the need for safe accessible toilets because of the *Phipps* litigation and *United States v. Cook County,* 10-cv-2946, litigation giving notice of ongoing ADA violations at the Jail. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶¶ 51-53.) That the defendants assigned inmates with substantial mobility impairments, like plaintiff, to rooms that historically are overcrowded and without grab bars is evidence of deliberate indifferent.

**V.   Under the Doctrine of Issue Preclusion, the Court Should Grant Summary Judgment on Plaintiff's Claim about the Steep Ramps and Defendants' Failure to Provide an Accessible Toilet at the Leighton Courthouse**

In *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015), the court held that conditions for wheelchair using detainees at the Cook County Courthouses during the time period that plaintiff attended court violated the Americans with Disabilities Act.

Under the doctrine of issue preclusion, "'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to that prior litigation.'" *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The claim in *Lacy* was a federal claim under the Americans with Disabilities Act and it was decided in federal court. "The federal law of claim preclusion applies here because the earlier judgment was rendered by a federal court." *Ross ex rel. Ross v. Bd. F Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). Under federal law, the doctrine of collateral estoppel "requires only a judgment that is final in the court rendering it, and not a judgment that is final after exhaustion of appellate remedies." *Old Republic Ins. Co. v. Chuhak & Tescon, P.C.*, 84 F.3d 998, 1000-01 (7th Cir. 1996). Issue preclusion was applied to an identical set of facts in *Crockwell v. Dart*, 2016 WL 4493456, at *4-6 (N.D.Ill. Aug. 26, 2016).

As the *Lacy* court explained,

> When attending court at any of the five suburban courthouses, wheelchair-using detainees encounter ramps between the loading dock where they are deposited by the transportation van and the courthouses' lower-level holding cells. Similarly, detainees with appearances at the Leighton courthouse maneuver a ramp in the tunnel between the Cook County Jail and the courthouse's lower-level staging area. The parties agree that the ramps leading to the lower-level holding cells at each of the six courthouses are not compliant with current ADA slope or landing requirements, and that a reasonable accommodation is for defendants' employees to push wheelchair using detainees up and down the ramps. Although defendants' witnesses testifies that there is a policy and practice of requiring wheelchair using detainees to be pushed up and down the courthouse ramps, plaintiffs complain that wheelchair using detainees are frequently unassisted.

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *5 (N.D.Ill. Oct. 8, 2015). The *Lacy* court ultimately held that "plaintiffs' rights under the ADA have been violated in the past with respect to the courthouse ramps," explaining that,

> Although defendants presented evidence that it is their policy and practice to assist wheelchair-using detainees maneuvering the courthouse ramps as a reasonable accommodation to overcome the ramps' steep slopes, such a policy can qualify as a reasonable accommodation only if it is consistently practiced. The evidence here, however, establishes that the policy was not in fact constantly observed in the past.

*Id.* at *11.

With respect to the toilets, the *Lacy* court explained that,

> [N]one of the holding cell bathroom facilities in any of the six courthouses (with the exception of two upper-level holding cells at the Maywood courthouse) were ADA compliant at the time this lawsuit was filed in August 2014 To overcome structural barriers in accessing the toilet facilities, defendants began providing wheelchair-using detainees with portable commode chairs in the Spring of 2014. However, the record is devoid of any evidence that

-13-

> the commode chairs actually assisted wheelchair-using detainees use
> the restroom facilities, let alone solved accessibility problems with
> the holding cell sinks that were located behind the toilets.

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *11 (N.D.Ill. Oct. 8, 2015).

Accordingly the *Lacy* court concluded that,

> Given that defendants did not consistently assist wheelchair-using
> detainees up and down courthouse ramps or provide a reasonable
> accommodation to allow wheelchair-using detainees to use holding
> cell bathroom facilities on the same basis as non-disabled detainees,
> the court finds that defendants have, in the past, violated plaintiffs'
> rights pursuant to the ADA.

*Id.* at *14.

The undisputed evidence shows that plaintiff was subjected to the same ramp and toilet facilities as the plaintiffs in *Lacy*. (Plaintiff's Statement Pursuant to Local Rule 56.1(a)(3) ¶¶ 1, 45-50.) Nor is it disputed that plaintiff maneuvered up and down the Leighton ramp unassisted in his wheelchair. (*Id.* ¶ 50.) Similarly uncontested, plaintiff did not have an ADA compliant bathroom when attending court at Leighton until the end of March 2015 when ADA renovations were complete to "Bullpen 34/5." (*Id.* ¶ 47.) Plaintiff's claim about the ramps and toilets therefore raises the same issues adjudicated in *Lacy*.

The *Lacy* court ultimately concluded that the plaintiffs were entitled to summary judgment on liability on their claims about steep ramps and inaccessible toilet facilitates because defendants were on notice of the need to accommodate the plaintiffs' disabilities:

> Because defendants were on notice of the need to provide
> accommodations for wheelchair-using detainees attending court at

-14-

the six courthouses as early as 1999, their deliberate decision not to
provide such assistance prior to 2014 establishes intentional
discrimination.

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 7351752, at *4 (N.D.Ill. Nov. 19, 2015).

Again, this is the same issue presented by plaintiff in this case.

In addition, the issues in *Lacy* were actually litigated. 2015 WL 7351752, at

*1-*2 (referring to the "extensive factual and evidentiary history of this case" and

"seven days of evidentiary hearing, multiple pre and post-hearing briefs, and

additional submissions of evidence"). Resolution of the questions at issue in this

case were essential to the grant of summary judgment in *Lacy*, and the judgment

was final in the court rendering it. Finally, the defendants in *Lacy* were vigorously

represented by highly competent attorneys from the office of the State's Attorney

of Cook County. Thus, all prerequisites for the application of issue preclusion are

satisfied. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Plaintiff is entitled

to summary judgment on his claims about the Leighton courthouse.

## VI.    Conclusion

It is therefore respectfully requested that the Court grant partial summary judgment in favor of plaintiff for the reasons previously advanced on his ADA and Rehabilitation Act claims.

<div style="margin-left:40%">

Respectfully submitted,

/s/  <u>Patrick W. Morrissey</u>

Thomas G. Morrissey
Patrick W. Morrissey
10150 S. Western Ave., Rear Suite
Chicago, IL. 60643
(773) 233-7900

*Attorneys for Plaintiff*

</div>